JAMES F. CLAPP (145814)
DOSTART CLAPP GORDON & COVENEY, LLP
4370 La Jolla Village Dr. Ste. 970
San Diego, California 92122
Tel. (858) 623-4200; Fax. (858) 623-4299

JEFFREY G. SMITH (133113)
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York 10016
Tel. (212) 545-4600; Fax. (212) 545-4653

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUITA BAHRAMIPOUR, AUSTIN HEBERGER, JR., and JANELLA HAIRSTON, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CITIGROUP GLOBAL MARKETS INC., formerly known as SALOMON SMITH BARNEY, INC.,<br><br>Defendant. | Case No. C 04-04440 CW<br>Case No. C 07-801 CW<br><br>**NOTICE OF FILING OF SPECIAL MASTER'S REPORT**<br><br>Hon. Claudia Wilken |
| LARRY A. LaVOICE, DONITA A. WILLIAMS, KENNETH W. GLICK, LEWIS SHAPIRO, and FRANCIS P. HEATH, MARK BRAHNEY, TERRY FOX, KEITH GILLMAN, STEVEN KOLODNER, ANGELO MASSARO, RONALD ROSENZWEIG, ROBERT SCRABIS, and JOSEPH BLOOD, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CITIGROUP GLOBAL MARKETS INC., formerly known as SALOMON SMITH BARNEY, INC.<br><br>Defendant. | |

Pursuant to the Court's February 21, 2007 Order appointing the Hon. Charles A. Legge (Ret.) as Special Master and its March 2, 2007 Order granting preliminary approval to the proposed class action settlement, plaintiffs hereby file the "Report, Findings and Recommendations of the Special Master," dated April 26, 2007.

In accordance with the Court's April 26, 2007 Order, plaintiffs will file their motion to approve the Special Master's report on or before May 7, 2007.

Dated: April 30, 2007　　　　　　　　　　　DOSTART CLAPP GORDON & COVENEY, LLP

　　　　　　　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　　　　　　JAMES F. CLAPP
　　　　　　　　　　　　　　　　　　　　　　Co-Lead Class Counsel and Attorneys for
　　　　　　　　　　　　　　　　　　　　　　Austin Heberger, Jr. and Janella Hairston

Hon. Charles A. Legge (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Telephone: (415) 774-2644
Fax: (415) 982-5287

Special Master

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUITA BAHRAMIPOUR, AUSTIN HEBERGER, JR., and JANELLA HAIRSTON, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CITIGROUP GLOBAL MARKETS INC., formerly known as SALOMON SMITH BARNEY, INC.,<br><br>Defendant. | CASE NO. C 04-04440 CW<br>CASE NO. C 07-801 CW<br><br>REPORT, FINDINGS AND RECOMMENDATIONS OF THE SPECIAL MASTER<br><br>JAMS Reference No. 1100050285 |
| LARRY A. LaVOICE, DONITA A. WILLIAMS, KENNETH W. GLICK, LEWIS SHAPIRO, and FRANCIS P. HEATH, MARK BRAHNEY, TERRY FOX, KEITH GILLMAN, STEVEN KOLODNER, ANGELO MASSARO, RONALD ROSENZWEIG, ROBERT SCRABIS, and JOSEPH BLOOD, individually, and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CITIGROUP GLOBAL MARKETS INC., formerly known as SALOMON SMITH BARNEY, INC.<br><br>Defendant. | |

REPORT, FINDINGS AND RECOMMENDATIONS         1

The undersigned was appointed by the Honorable Claudia Wilken, United States District Judge, as a Special Master to hold a hearing, make appropriate findings, and make recommendations to the Court regarding the allocation of the settlement proceeds among the members of the plaintiff class.

There are two related cases, cited in the caption above. They are different in that Bahramipour[1] concerns plaintiffs only in the state of California, while LaVoice concerns plaintiffs in all other United States jurisdictions. The two cases have been related by the District Court, and the proposed class settlement pertains to both. The Special Master is advised that Judge Wilken has given preliminary approval to the class settlement, but that the notices of the settlement have not yet gone out to the class. Because the issue of allocation to be addressed by the Special Master overlaps both cases, this single report is being prepared as to both.

## JURISDICTION

The order appointing the undersigned as Special Master was issued by the District Court on February 21, 2007 and defines the jurisdiction of this Special Master. The jurisdiction is to "review and make an independent determination concerning the fairness of the allocation of the Settlement proceeds in light of the applicable law in the jurisdictions covered by the Settlement and any other factors deemed appropriate by the Master, and to make a written recommendation to the Court regarding the allocation prior to the mailing of the class notice…."

After the class notice is mailed and if objections are filed with respect to the allocation, the Special Master is also vested with jurisdiction to determine those objections; however, the class notice has not yet gone out and no objections have as yet been filed.

## HEARING

Pursuant to the above jurisdiction, a hearing was held by the Special Master on April 11, 2007. Present at the hearing were counsel for plaintiffs and counsel for defendant Citigroup Global Markets, Inc. The participation by counsel for defendant was limited. Defense counsel did not take any substantive position on the allocation issue, but did cooperate with the Special Master in replying to questions and providing information. The Special Master was advised that

---

[1] Ms. Bahramipour subsequently withdrew as a named class representative, for reasons unrelated to the allocation of the settlement proceeds.

REPORT, FINDINGS AND RECOMMENDATIONS        2

notice of this hearing had been given to the Attorneys General and Departments of Labor of the United States and the state jurisdictions involved in the allocation issue. However, no representative of the Attorneys General or the Departments of Labor sought to appear at the hearing, either in person, in writing, or by telephone. Since notice to the class has not yet gone out, no class objectors appeared at the hearing. Everything said at the hearing was recorded by a court reporter.

The Special Master has received and reviewed copies of: (1) the Stipulation and Order appointing the undersigned as Special Master; (2) the First Amended Complaint in the Bahramipour action; (3) and the First Amended Class and Collective Action Complaint in the LaVoice action; (4) plaintiffs' Proposal Regarding Allocation of Settlement of Proceeds, which is plaintiffs' proposed plan of allocation and statement of reasons and authorities in support of that proposal; (5) extensive research on the state laws done by plaintiffs' counsel: (a) one a binder containing the relevant case decisions and statutes of each relevant jurisdiction on overtime, (b) the second a binder of the statutes and cases of each relevant jurisdiction dealing with wage deductions and business expenses; (6) an appendix of documents which counsel for plaintiffs believe are particularly relevant to the issue of the fairness of the allocation proposal; and (7) a letter from counsel dated April 14, 2007.

## CLAIMS AND APPLICABLE LAW

The allegations in these cases raise two types of claims, simplified here for discussion purposes.

One is an alleged failure to pay plaintiffs overtime to which they are allegedly entitled. The law governing these claims comes from two sources. One is the federal Fair Labor Standards Act, which applies to all plaintiffs in these cases. The other are the separate state statues and cases applicable to those plaintiffs residing or working in each individual state. The state overtime statutes are largely duplicative of the FLSA. But some states have no specific overtime statutes, and others have salary thresholds that are different from one another and different from the FLSA. California is an exception to that state pattern. California has its own distinct overtime statute, and a body of case law has developed in California under that statute. California Labor Code § 510 (a); Wage Order 4-2001, §§ 1 (A) and 3 (A); Ramirez v. Yosemite

Water Co., 20 Cal 4th 785 (1999); Bell v. Farmers Insurance Exchange, 87 Cal App 4th 805 (2001). The standards defined by California law, in both its statutes and the applicable case law, create a more favorable climate for plaintiffs than do the laws of other states. And California law is more favorable to plaintiffs than is the Fair Labor Standards Act, on such issues as the definition of an employee, the administrative exemption, the commissioned sales exemption, and the salary threshold. Regardless of who may be correct on the contested issues under California and federal law, the Special Master concludes that plaintiffs' opportunities for recovery under California's overtime law are greater than under the overtime laws of any other state and under the FLSA.

The second type of claim (again generally stated for discussion purposes) is that defendant allegedly made improper deductions from the commissions of plaintiffs, primarily losses from trading errors and wages paid to support staff. The applicable law on such deductions is almost entirely state law. That is, the FLSA does not have wage deduction or expense provisions that are applicable to these plaintiffs. The applicable provisions are under state statutes and case law, and they of course apply only to those plaintiffs resident or employed in each particular state. Applying the statues and cases of each separate state jurisdiction can produce a large number of variations. But some differences can be noted: In the majority of state jurisdictions, an employer may lawfully deduct losses from trading errors and the costs of support staff. That is either because there is no law on the subject, or because the state permits such deductions as long as they are authorized by the employee in writing ahead of time. However, 21 jurisdictions have laws that at least arguably restrict an employer's right to make such deductions even if they are authorized in writing ahead of time.

Again, California law is the most protective of employees on these issues. California's wage deduction protections are based upon both statutes and court decisions. California Labor Code §§ 221, 224, 2802, 2804. Kerr's Catering v. D.I.R., 57.Cal .2d 319 (1962); Quillian v. Lion Oil Co., 96 Cal. App.3d 156 (1979); Hudgins v. Neiman Marcus, 34 Cal.App.4th 1109 (1995); Ralphs Grocery v. Superior Court, 112.Cal.App.4th 1090 (2003); Steinhebel v. L.A. Times, 26.Cal.App.4th 696 (2005); Koehl v. Verio, 142.Cal.App 4th 1313 (2006).

REPORT, FINDINGS AND RECOMMENDATIONS            4

Defendant of course contests, on many grounds, plaintiffs' claims under California law. However, both sides agree that the chances of recovery by employees are greater under California law than under the laws of other states. As stated, 20 other states do have laws that arguably restrict defendant's right to deduct expenses or losses from plaintiffs. However, those rights do not appear to be as strong as they are under the laws of California. There is little established case law in any of the other states. And defendant may be able to successfully argue that their statutory provisions do not prohibit deductions from unearned gross commissions. A state by state analysis indicates numerous variances among the states, again with a large number of uncertainties. In summary, in most states other than California there is little case law, and what case law exists is not necessarily dispositive of the issues presented in these two cases. Claimants face a greater risk of loss in those other states than they do in California.

## METHODS OF ALLOCATION

With all of the variants in plaintiffs' claims and their degrees of possible success under the laws of each jurisdiction, there is no single method of gradation among the jurisdictions or among groups of plaintiffs that provides any degree of objective certainty. Attempting to assess degrees of potential success in one state compared to all the others contains too many variations for reasonable empirical rating. The exception is California, where the law on both overtime and wage deductions is a quantum leap from other states, but a leap that is difficult of accurate quantification.

So why not just use a "per person" allocation among all claimants, regardless of their states? The first answer is that such a process does not even attempt to apply facts and law. Second, the only law which is uniform among all plaintiffs is the Fair Labor Standards Act. But for several reasons[2] that act does not present a high degree of potential success. At that point then one must look at the state laws with their innumerable variations. And finally, such a per capita approach is likely to be rejected, or at least objected to, by claimants in states (such as California) where plaintiffs' rights to appear to be much stronger. If the cases are going to be settled and approved as reasonable, the allocation must have some basis that is rational, although

---

[2] E.g.: the administrative exemption, the commissioned sales exemption, the November 27, 2006 opinion of the U.S. Department of Labor, and Miller v. Famers Insurance, 2007 U.S. App.LEXIS 7403 (9th Cir March 30, 2007).

REPORT, FINDINGS AND RECOMMENDATIONS        5

not necessarily perfect, and must present some degree of attractiveness to the class members as a whole.

The Special Master recognizes that it is his responsibility to make an independent determination concerning the fairness of an allocation. However, as is apparent from the above discussion of the numerous different statutes and case law that apply, no one overarching method of allocation comes to the fore. Instead, an allocation must involve some checks, balances and trade-offs in attempting to weigh the variations in a manner that is at least reasonable, if not perfect.

In such a circumstance, it is unwise for the Special Master not to give serious consideration to the proposals made by the representatives of the plaintiff class. Those attorneys are experienced in the settlement of class actions, including overtime cases and expense deduction cases. They are conversant with the state law variations. And they achieved a settlement with hard negotiations against knowledgeable defense counsel.

At the hearing, the Special Master specifically inquired as to the methodology that plaintiffs' counsel used in arriving at the settlement amount, and then at the allocation of the settlement.

They began with an analysis of each state's statutes of limitation. They then applied to each plaintiff the greater of the three year statute of limitations of the FLSA or the applicable statute of limitations in the state of each plaintiff. They obtained information from Citigroup regarding the numbers of plaintiffs and their periods of employment. From that information they calculated the number of "work months" for each plaintiff during the applicable period of limitation. They also obtained data from Citigroup regarding the deductions which were made from each plaintiff. Some of this information from Citigroup was in response to discovery, and other information was voluntarily provided. The Special Master has no reason to question the accuracy or completeness of the information from Citicorp, since plaintiffs' counsel had an interest in seeing that complete and accurate information was produced.

Plaintiffs' counsel then negotiated with Citigroup, with the assistance of an experienced mediator. Three mediation sessions were held, and the total settlement number of $98 million

was the number suggested by the mediator. There is every reason to believe that the negotiations and the agreed upon settlement amount were conducted in good faith and at arms length.

## THE PROPOSED ALLOCATION FORMULA

Plaintiffs propose to allocate the settlement proceeds among the class members as follows:[3]

1. Participating class members in California will receive $375 per work month, for both their overtime and deduction claims. This amount is identical to the settlement approved in Bowman, et al. vs. UBS Financial Services Inc., N.D. Cal. 04-3525, involving California plaintiffs. That amount was selected because the California allocation should rationally be substantially greater than the allocation to other states for the reasons discussed above, and because the Bowman class settlement was approved and therefore affords some authority.

2. Participating class members in all of the states and territories (except California) would receive a minimum of $75 per work month. As to those states which do not have favorable wage deduction laws,[4] that is all that they will receive---in essence on their overtime claims. This amount is identical to the minimum payment which was approved by the District Court in Glass, et al. vs. UBS Financial Services Inc., N.D. Cal. 05-4068 (involving non-California plaintiffs). While the Glass case is not yet final, it has been approved by the District Court, and the allocation of the settlement proceeds also had the separate approval of this Special Master. There is a possibility for an increase in the $75 per work month amount. The amount allocated to the non-California class members is almost entirely non-reversionary. That is, any unclaimed amounts will be redistributed to other non-California class members who have filed claims. The payments to the participating class members in the states and territories in footnote 4 could then total approximately $119 per work month.

---

[3] The dollar amounts must be within the "net settlement value" as calculated under the settlement agreement; that is, after the deduction of Court awarded attorneys' fees, litigation expenses, plaintiff enhancements and the like.

[4] Alabama, Arkansas, Arizona, Colorado, Connecticut, District of Columbia, Delaware, Florida, Georgia, Idaho, Illinois, Kansas, Louisiana, Massachusetts, Maryland, Minnesota, Missouri, Mississippi, Montana, North Carolina, North Dakota, Nebraska, New Mexico, Nevada, Ohio, Oklahoma, South Carolina, Tennessee, Texas, Utah, Virginia, Virgin Islands, and Wisconsin.

REPORT, FINDINGS AND RECOMMENDATIONS          7

3. Participating class members from 20 other states and territories which <u>do</u> have favorable wage deduction laws would receive a minimum of $126.28 per work month.[5] That includes compensation for both their overtime claims and their deduction claims. That amount is a residual number; that is, it was calculated after deducting the $375 per work month and the $75 per work month under paragraphs 1 and 2 above from the settlement amount. But that residual amount is similar to, and indeed higher than, the amounts awarded to the class members in the highest non-California states in the <u>Glass</u> case. And again, if not all class members file claims to the settlement, the amount could rise to approximately $200 per work month.

The above three allocations would result in a reduction of the percentage allocation to the California class members discussed in the Settlement Agreement from 48.98% to 45.97%, and an increase in the percentage allocation to non-California class members from 51.02% to 54.03%. Such a reallocation is within the jurisdiction of the Special Master under § VII (C) of the Stipulation for the Settlement of the Class Action.

The proposed allocation system accomplishes some worthwhile objectives: First, all of the validly recognized claimants will get something. Second, it is not a one-size-fits-all approach which ignores the many differences among the states. Third, it attempts to mirror the two settlements which have been approved by the Court in similar cases, <u>Bowman</u> and <u>Glass</u>, although they are not yet final authority. Fourth, it recognizes the legal reality that because of California's more favorable statutes and case law, plaintiffs in California would undoubtedly recover more than plaintiffs in other states. Fifth, it recognizes the distinctions between the strength of claims under the FLSA versus those under state laws. Sixth, it recognizes the distinctions between states that do and do not have wage deduction laws favorable to plaintiffs. And finally, the proposal bows to the inevitable conclusion that attempting to work out an allocation that include all variants of per person, per state, per type of claim, and per each type of state law is simply not doable.

---

[5] Alaska, Guam, Hawaii, Iowa, Indiana, Kentucky, Maine, Michigan, New Hampshire, New Jersey, New York, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Dakota, Vermont, Washington, West Virginia and Wyoming.

REPORT, FINDINGS AND RECOMMENDATIONS          8

While individual objectors may later point to factors which are particular to them and which may appear to be more favorable to others, those objections can be addressed after the class notice is sent out. And such objections must be addressed in the context of the Court's and the Special Master's legal obligation to determine whether the settlement and the allocation are fair, adequate and reasonable to the class as a whole. F.R.C.P. Rule 23.

## FINDINGS AND RECOMMENDATIONS

The Special Master makes the following findings; provided that the Special Master is making no findings as to the settlement as a whole, since that is not a matter within his jurisdiction, but only findings as to the allocation formula:[6]

1. The Special Master is duly appointed under an order of this Court to hear and determine the issue of the fairness of the allocation of the settlement proceeds.

2. The proposed allocation defined above in paragraphs 1-3 of the section "The Proposed Allocation Formula" is the independent determination of the Special Master, albeit based upon proposals advanced by the class representatives. The formula was originated by competent counsel with extensive prior experience in wage and hour law and class actions.

3. Extensive analysis has been given by counsel and by the Special Master to the Fair Labor Standards Act, and to the separate statutes and cases in each of the United States jurisdictions involved.

4. The discussions to define the allocation formula were conducted at arms length and in good faith in light of the available legal and factual information.

5. The Proposed Allocation Formula is fair, reasonable and adequate to the plaintiffs' class as a whole.

The Special Master recommends to the Court that:

1. The proposed allocation formula defined above in paragraphs 1-3 of the section "The Proposed Allocation Formula" be found to be fair, reasonable and adequate.

2. The Court approve that Proposed Allocation Formula..

---

[6] Counsel believe that the Special Master is also being asked to comment on the proposed $25,000 maximum enhancement for the class representatives. The Special Master has received no record on this issue and can make no finding or recommendation; however, based upon his observation of other cases, the Special Master believes that the maximum is within the realm of reasonableness which can be submitted for consideration by the class.

REPORT, FINDINGS AND RECOMMENDATIONS                 9

3.  The Proposed Allocation Formula be made a part of the settlement terms submitted to the class members.

4.  The Special Master retain jurisdiction to consider any objections to the allocation of the settlement proceeds, as provided in paragraph 2B of the Court's Order of February 21, 2007.

Respectfully submitted by Charles A. Legge, Special Master appointed under the Order of February 21, 2007.

Dated: April 26, 2007

Hon. Charles A. Legge (Ret.)
Special Master

## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Bahramipour, Guita, et al. vs. Citigroup Global Markets, Inc. aka Smith Barney
Reference No. 1100050285

I, Melissa Ornstil, not a party to the within action, hereby declare that on April 26, 2007 I served the attached Report, Findings and Recommendations of Special Master on the parties in the within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at San Francisco, CALIFORNIA, addressed as follows:

James F. Clapp, Esq.
Dostart, Clapp, Sterrett & Coveney
4370 La Jolla Village Dr.
Suite 970
San Diego, CA 92122

jclapp@sdlaw.com


I declare under penalty of perjury the foregoing to be true and correct. Executed at San Francisco, CALIFORNIA on April 26, 2007.

_____
Melissa Ornstil
JAMS The Resolution Experts
melissaornstil@jamsadr.com

## PROOF OF SERVICE

      I am employed in the county of San Diego, State of California. I am over the age of eighteen and am not a party to this case. I am employed in, or am a resident of, the County of San Diego, California, where the mailing occurs; and my business address is: DOSTART CLAPP GORDON & COVENEY, LLP, 4370 La Jolla Village Dr., Ste. 970, San Diego, CA 92122.

      On April 30, 2007, I served the foregoing document(s) described as:

NOTICE OF FILING OF SPECIAL MASTER'S REPORT

on the interested parties in this action addressed to the addressee as follows:

| | |
|---|---|
| Chris A. Hollinger, Esq.<br>Christopher T. Scanlan, Esq.<br>O'MELVENY & MYERS LLP<br>275 Battery Street, 26th floor<br>San Francisco, CA 94111-3306<br>Email: chollinger@omm.com<br>        cscanlan@omm.com | Framroze M. Virjee, Esq.<br>Adam P. Kohsweeney, Esq.<br>O'MELVENY & MYERS LLP<br>400 South Hope Street<br>Los Angeles, CA 90071-2899<br>Email: fvirjee@omm.com<br>        akohsweeney@omm.com |
| Mark Thierman, Esq.<br>THIERMAN LAW FIRM<br>7287 Lakeside Dr.<br>Reno, NV 89511-7652<br>Email: laborlawyer@pacbell.net | H. Tim Hoffman, Esq.<br>Arthur W. Lazear, Esq.<br>HOFFMAN & LAZEAR<br>180 Grand Avenue, Suite 1550<br>Oakland, CA 94612<br>Email: hth@hoffmanandlazear.com<br>        awl@hoffmanandlazear.com |
| John M. Kelson, Esq.<br>LAW OFFICES OF JOHN M. KELSON<br>1999 Harrison Street, Suite 700<br>Oakland, CA 94612<br>Email: kelsonlaw@sbcglobal.net | |

☒    (BY E-FILE) and causing a true copy thereof to be filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_____

| | |
|---|---|
| Jeffrey G. Smith, Esq.<br>WOLF HALDENSTEIN ADLER<br>FREEMAN & HERZ LLP<br>270 Madison Avenue<br>New York, New York 10016 | Jerry K. Cimmet, Esq.<br>177 Bovet Road Ste 600<br>San Mateo, CA 94402-3122 |
| Edward P. D'Alessio, Esq.<br>WINNE, BANTA,<br>HETHERINGTON, BARALIAN &<br>KAHN, P.C.<br>21 Main Street, P.O. Box 647<br>Hackensack, NJ 07602-0647 | Max Folkenflik, Esq.<br>FOLKENFLIK & MCGERITY<br>1500 Broadway, 21st floor<br>New York, NY 10036 |
| Shannon Liss-Riordan, Esq.<br>PYLE, ROME, LICHTEN,<br>EHRENBERG & LISS-RIORDAN,<br>P.C.<br>18 Tremont Street, Ste. 500<br>Boston, MA 02108 | Bruce M. Nagel, Esq.<br>NAGEL RICE, LLP<br>103 Eisenhower Parkway<br>Roseland, NJ 07068 |

☒       (BY UNITED STATES POSTAL SERVICE) and placing a true copy thereof in a sealed envelope and personally placing such envelope with postage fully prepaid for deposit in the United States Postal Service, this same day, at my business address shown above, following ordinary business practices. I further declare that I am readily familiar with our business' practice for collection and processing of correspondence for mailing with the United States Postal Service; and that the correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business.

Executed on <u>April 30, 2007</u>, at San Diego, California.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

_____
TERI L. ZAAYER